# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 22-1118V
Filed: June 15, 2023
PUBLISHED

|  |  |
|---|---|
| MELANIE BOSTIC, on behalf of her minor child, K.T., <br><br> Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Special Master Horner |

*Andrew Donald, Downing, Downing, Allison & Jorgenson, Phoenix, AZ, for petitioner.*
*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION REGARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On May 5, 2023, petitioner filed a motion seeking an award of interim attorneys' fees and costs in connection with a separately filed motion by her counsel to withdraw as counsel of record. (ECF No. 24.) On May 24, 2023, petitioner filed a supplemental motion seeking additional interim attorneys' fees and costs. (ECF No. 30.) In total, petitioner seeks $19,551.13. For the reasons discussed below, petitioner is awarded interim attorneys' fees and costs in the reduced amount of $12,776.43.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

1

## I. Procedural History

Petitioner filed this action on behalf of her minor child, K.T., on August 26, 2022. (ECF No. 1.) At that time she was acting *pro se*. The petition alleges that K.T. suffered "debilitating arm, shoulder, thoracic, and neurological injuries suffered as a direct result of his vaccination with HPV-Gardasil 9." (*Id.* at 1.) The vaccination at issue was administered on August 26, 2019, and the petition alleged onset of an adverse reaction beginning the same day. (*Id.* at 1-2.) The petition indicates that the action is being filed as a prerequisite to pursuing the vaccine manufacturer. (*Id.* at 1.)

On September 27, 2022, petitioner's current counsel, Mr. Downing, entered the case via a consented motion to be substituted as counsel. (ECF No. 11.) Petitioner subsequently filed medical records on November 16, 2022, February 13, 2023, and April 24, 2023. (ECF Nos. 13, 17.) To date, respondent has not yet confirmed completion of his medical review or filed his Rule 4 report.

On April 24, 2023, I issued a notice advising that the statutory 240-day time period for the special master's decision had expired. (ECF No. 21.) Thereafter, petitioner's counsel (Mr. Downing) filed a motion to withdraw as attorney as well as a motion for interim attorneys' fees and costs. (ECF Nos. 23-24.) A follow up status conference was held on May 9, 2023. (ECF No. 25.) Petitioner confirmed that she does not wish to exit the program as a result of my issuance of the 240-day notice. (ECF No. 25.)

Respondent filed his responses to petitioner's counsel's motion to withdraw and for an award of interim attorneys' fees and costs on May 19, 2023. (ECF Nos. 28-29.) However, on May 24, 2023, petitioner filed a supplemental motion for additional interim attorneys' fees and costs incurred by another firm, the Carlson Firm, that was apparently additionally working on petitioner's case despite her having filed it *pro se*. (ECF No. 30.) Respondent filed his response to the supplemental motion on June 1, 2023. (ECF No. 31.) Petitioner's reply period for the supplemental motion ended on June 8, 2023. Petitioner did not file a reply to any of the three pending motions.

Accordingly, petitioner's motion for an award of interim attorneys' fees and costs is ripe for resolution.

## II. Factual History

The medical records that have been filed to date confirm K.T. was vaccinated on August 26, 2019. At that time, he received both a Boostrix Tdap vaccination and a Gardasil 9 HPV vaccination. (Ex. 7, p. 5.) The HPV vaccine was administered in his left arm and Tdap vaccine was administered in the right arm. (*Id.*) Respondent notes that no pre-vaccination records are available (ECF No. 24, n. 1); however, the vaccinations occurred at a routine well child visit at which the only noted concern was left eye astigmatism (Ex. 5, p. 82). On September 19, 2019, petitioner called the doctor to

2

report that she was concerned that K.T.'s left arm "still has pain" and that it hurts when moved. (Ex. 5, p. 67.)  Follow up care was sought on April 23, 2020.  (Ex. 5, p. 56.)  K.T.'s primary care physician questioned (*i.e.* noting "?") whether K.T. was experiencing nerve pain due to vaccine administration. (*Id.*)  An x-ray of K.T.'s left humerus was performed, which was concerning for osteochondroma. (*Id.* at 66.)  However, osteochondroma was not ultimately viewed as a likely explanation for K.T.'s symptoms. (Ex. 7, p. 67.)

Following the x-ray, K.T. was referred to an orthopedist. (Ex. 5, pp. 60-61.)  Thereafter, records suggest a breakdown in communication between petitioner and K.T.'s primary care provider. (*E.g.* Ex. 5, p. 54.)  The records filed to date suggest this was followed by a gap in treatment from April 23, 2020 until August 16, 2022.  Thereafter, K.T. presented for care reporting a three-year history of post-vaccination symptoms affecting the left arm.  (Ex. 7, p. 8.)  His treating physicians appear to remain unsure of the nature of K.T.'s underlying condition.  (*E.g. Id.* at 12-13 (issuing referrals to both neurology and orthopedics and stating that underlying cause of symptoms is "unclear.")  K.T. was also referred to physical therapy and the recommended modalities of treatment related to the deltoid, rotator cuff, and joint capsule. (Ex. 8, p. 10.)

### III.     Legal Standard

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis*. Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1352 (Fed. Cir. 2008).

"Good faith" is a subjective standard.  *Hamrick v. Sec'y of Health & Human Servs*., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  *Turner v. Sec'y of Health & Human Servs*., No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  "Reasonable basis," however, is an objective standard.  Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in his claim.  *See Turner*, 2007 WL 4410030, at *6.  Instead, a reasonable basis analysis "may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation."  *Amankwaa v. Sec'y of Health & Human Servs*., 138 Fed. Cl. 282, 289 (2018).  More than a "mere scintilla" of objective evidence is required to demonstrate a reasonable basis for the filing of a petition. *Cottingham v. Sec'y of Health & Human Servs*., 971 F.3d 1337, 1346 (Fed. Cir. 2020).

Stressing the absence of any prevailing party requirement under the Vaccine Act, the Federal Circuit held in *Avera* that interim awards for attorneys' fees and costs are appropriate under the Vaccine Act.  515 F.3d at 1352 (citing §300aa-15(e)(1)).

Nonetheless, the Circuit denied an interim award in *Avera*, because the appellants had not suffered "undue hardship." *Id*. The Circuit noted that interim awards are "particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Id*. Subsequently, in *Shaw v. Secretary of Health & Human Services*, the Federal Circuit reiterated its *Avera* standard, noting that "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d 1372, 1375 (Fed. Cir. 2010).

Although noting that an award of interim attorneys' fees and costs is within the "reasonable discretion" of the special master, decisions of the Court of Federal Claims subsequently emphasized the Federal Circuit's "undue hardship" language and cautioned that the *Avera* decision did not create a presumption in favor of interim fees and costs in all cases. *See, e.g.*, *Shaw v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 420, 423 (2013). Nonetheless, it has also been noted that "the Federal Circuit in *Avera* and *Shaw* did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees." *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012).

In *Woods*, the Court of Federal Claims observed that withdrawal of an attorney should be an important, if not deciding, factor in determining the appropriateness of an interim fee award. 105 Fed. Cl. at 154. Specifically, "there is no reason to force counsel, who have ended their representation, to delay receiving fees indefinitely until the matter is ultimately resolved. The special master articulated a valid concern that it was 'unknowable' whether the case would be settled, or extensively litigated to the point of determining damages. The special master reasonably concluded that delaying a fee award to counsel who had ended their representation for an indeterminable time until the case was resolved sufficed to constitute the type of 'circumstances' to warrant an interim fee award." *Id*.

Following *Woods*, special masters have previously observed that "after withdrawing from a case, it may be difficult for former counsel to receive a fees award, and, in such circumstances, special masters have often found it reasonable to make such interim awards." *See, e.g.*, *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Nonetheless, "the mere fact that an attorney plans to withdraw is not necessarily a hardship that triggers an award of interim attorneys' fees and costs." *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 302 (2011).

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g. Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993). Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988

F.2d 131 (Fed. Cir. 1993) (per curiam). A special master need not engage in a line-by-line analysis of petitioner's fee application when assessing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Reasonable attorneys' fees and costs are determined using the lodestar approach. *Avera*, 515 F.3d at 1347.

## IV. Party Positions

### a. Good Faith

Neither party explicitly addresses the good faith requirement, though respondent defers to the undersigned's discretion with respect to all of the statutory elements for an award of attorneys' fees and costs. (ECF No. 28, p. 2.) Especially absent any specific challenge, there is no reason to question that this claim was brought in good faith.

### b. Reasonable Basis

With respect to whether there was a reasonable basis for the filing of this petition, petitioner stressed her own affidavit that asserts that K.T. suffered both a Shoulder Injury Related to Vaccine Administration ("SIRVA") and a neurological injury. (ECF No. 24, p. 2 (quoting Ex. 4, p. 2).) She further quotes a medical record of August 16, 2022 that documents the same history as set forth in her affidavit. (*Id.* at 3 (quoting Ex. 5, p. 11.) She further notes that this history resulted in a referral for physical therapy. (*Id.* (citing Ex. 8, p. 10).)

Respondent defers to the undersigned with respect to whether there was a reasonable basis for filing the petition. (ECF No. 28, p. 2.) However, respondent does note the following:

> It does not appear that all relevant records have yet been filed, and while there are references in the records that petitioner informed medical providers that her child suffered shoulder pain after a vaccination, there are virtually no pre-injury records and large gaps of time between the date of vaccination and when treatment was ultimately sought.

(*Id* at n. 1 (citing Ex. 5, pp. 56, 67, 71).)

### c. Award of Interim Fees

Petitioner stresses that awards of interim attorneys' fees and costs are explicitly authorized by binding precedent, explaining that this aligns with the Vaccine Act's goal of assuring petitioners have access to competent counsel. (ECF No. 24, pp. 3-4 (citing *Avera*, 515 F.3d. 1343).) Petitioner additionally indicates that withdrawal of counsel has been viewed as an "important factor" in determining whether to award interim attorneys' fees and costs. (*Id.* at 4-5 (citing, *inter alia*, *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 92 (2016)).)

5

Respondent requests that the undersigned exercise his discretion to determine whether an interim award of attorneys' fees and costs is appropriate at this time. (ECF No. 28, p. 3.)

### d. Reasonable Rates for Counsel of Record

Petitioner asserts that the hourly rates reflected in counsel of record's billing records is reasonable and consistent with what has been awarded to counsel in prior cases.  (ECF No. 24, p. 6 (citing *Laney v. Sec'y of Health & Human Servs.*, No. 14-984V, 2016 WL 7030744 (Fed. Cl. Spec. Mstr. Oct. 18, 2016)).)  Specifically, petitioner explains that counsel of record has been found entitled to forum rates and that the following rates are appropriate. For work performed in 2022 and 2023, petitioner requests:  For Mr. Downing, an attorney with 28 years of experience (20 in the Vaccine Program), $445 per hour; For Ms. Avery and Mr. Malvick, paralegals, $155 per hour. (*Id.* at 7.)

Respondent requests that, if any award is made, the undersigned exercise his discretion to determine a reasonable amount of such an award. (ECF No. 28, p. 3.)

### e. Additional Attorneys' Fees for the Carlson Firm

Petitioner indicates that "[t]he Carlson Firm expended significant attorney time and expenses in the preliminary work-up on the case."  (ECF No. 30, p. 1.)  However, "[a]t the time of Petition filing, it was recognized that Counsel specifically licensed in the United States Court of Federal Claims would be needed to represent Ms. Bostic.  Ms. Bostic submitted her Petition pro se, and the Carlson Firm referred Ms. Bostic to undersigned counsel." (*Id.*)

Petitioner submitted an invoice reflecting a "matter ledger" detailing hours billed in the case. (ECF No. 30-1.)  The ledger identifies two attorneys (Javad TahbazSalehi and Ruth Rizkalla) within the header, but the document does not otherwise delineate what individual performed what work. (*Id.*)  The header indicates that 48 hours of legal assistant time was billed at $175 per hour and 19 hours of attorney time were billed at $375 per hour. (*Id.*)  Petitioner does not provide any specific argument to support the rates reflected in the billing records.

In his supplemental response, respondent continues to defer to the undersigned's discretion regarding the appropriateness and amount of any award; however, respondent also raises several specific points. (ECF No. 31.)  Respondent argues that the language of petitioner's supplemental motion "strongly suggests" no attorney at the Carlson Firm is eligible to practice before this court, meaning the firm should at best be compensated at paralegal rates. (*Id.* at n. 1 (citing *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525, at *4 (Fed Cl. Spec. Mstr. May 31, 2013); *Paredes v. Sec'y of Health & Human Servs.*, No. 19-1306V, 2023 WL 3719118 (Fed Cl. Spec. Mstr. May 20, 2023)).)  Respondent further argues that "[i]t is not clear that all the work was performed in furtherance of petitioner's vaccine claim,

6

as the Carlson Law Firm also discussed involvement in possible multi-district litigation with petitioner." (*Id.* at n. 2 (citing ECF No. 31-1, pp. 4-5).)  Respondent stresses that only attorneys' fees and costs "incurred in any proceeding on such petition" may be reimbursed.  (*Id.* (citing 42 U.S.C. § 300aa-15(e)(1)).)  Finally, respondent notes that despite two different firms working on the case, complete medical records have not been filed and the Carlson Firm continued to bill after referring the case to Mr. Downing, seeming to question the reasonableness of the hours billed. (*Id.* at n. 2-3.)

## V.     Discussion

In order to demonstrate a reasonable basis for the filing of the petition, petitioner must present at a minimum "more than a mere scintilla" of evidence to support the necessary elements of her petition, including causation.  *Cottingham,* 917 F.3d at 1346.  In this case, petitioner asserts that she has a reasonable basis for bringing her claim based on the presence of both "SIRVA" and a neurologic injury affecting the upper extremities.  (ECF No. 24, p. 2.)  This assertion contains an internal tension insofar as these explanations are mutually exclusive.  *See* 42. C.F.R. 1003.(c)(1) (explaining that SIRVA is musculoskeletal and not neurologic).  The Table Injury of SIRVA includes four criteria – no prior history of shoulder pain or dysfunction, onset of shoulder pain within 48 hours of vaccination, pain and reduced range of motion confined to the shoulder, and that no other condition, especially neurologic, is present to explain the symptoms.  *Id.*  If K.T.'s injury is consistent with a Table Injury of SIRVA, then reasonable basis can be supported in part by the presumption of causation afforded to Table injuries even without any express medical opinion implicating the vaccination. *See* § 300aa-11(c) (distinguishing pleading requirements for Table injuries and causation-in-fact); *see also Cottingham*, 971 F.3d at 1345-46 (explaining that reasonable basis examines the necessary elements of a petition under § 300aa-11(c)).

Here, the following is supportive of a potential SIRVA injury.  First, although respondent is correct to note that pre-vaccination records are lacking, the vaccine at issue was administered at a well child primary care appointment during which no relevant issues were documented. (Ex. 5, p. 82.)  This provides at least some medical record evidence, consistent with the first SIRVA criterion, to suggest there was no history of prior shoulder dysfunction.  Second, although the earlier records are less detailed and a substantial subsequent gap in treatment history, there is medical record evidence suggesting an immediate post-injection onset of left shoulder pain. (Ex. 5, pp. 56, 67; Ex. 7, p. 8.)  Thus, there is also record evidence consistent with the second SIRVA criterion and with the requisite timeframe for onset listed on the Vaccine Injury Table.

Nonetheless, there is also significant medical record evidence reflecting reports of symptoms potentially consistent with a neurologic injury extending beyond the shoulder, which greatly complicates any Table SIRVA claim with regard to the third and fourth criteria. Importantly, however, none of these symptoms have been confirmed by objective testing and K.T.'s treating physicians have not provided any specific

neurologic diagnosis nor ruled out an orthopedic/musculoskeletal injury. *Accord Durham v. Sec'y of Health & Human Servs.,* No. 17-1899V, 2023 WL 3196229, at *14 (Fed. Cl. Spec. Mstr. May 2, 2023) (explaining a petitioner may prove a Table SIRVA even if there is some clinical evidence of neuropathy, if she can nonetheless prove it is not meaningful to her symptoms). Thus, these issues, though highly significant to the question of entitlement to compensation, are not dispositive at this stage with respect to the reasonable basis for filing the petition.

All of this is sufficient to demonstrate a reasonable basis for the filing of this petition, albeit just barely. However, the fact that I have awarded attorneys' fees and costs should not be interpreted by petitioner as any indication that she will succeed in pressing her claim. The evidentiary burden for an award of attorneys' fees and costs is far lower than the evidentiary burden for demonstrating entitlement to compensation for K.T.'s alleged injury. Moreover, too much information remains unavailable at this juncture to assess the overall merits of the case. *Accord Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-*7 (Fed. Cl. 2012) (distinguishing reasonable basis from a likelihood of success under preponderant standard). Additionally, because I have concluded that there was a reasonable basis for the filing of this petition based on the Table Injury of SIRVA, it is not necessary to reach the separate question of whether petitioner alternatively had a reasonable basis with respect to any neurologic injury.

Turning to the question of whether an interim award of attorneys' fees and costs is appropriate at this time, I find that it is given the overall circumstances of this case. *Woods*, 105 Fed. Cl. at 154. I also find that the hours billed by counsel of record are reasonable. However, adjustment is made to Mr. Downing's 2022 hourly rate. *See Madigan v. Sec'y' of Health & Human Servs.*, No. 14-1187V, 2023 WL 3778884 (Fed. Cl. Spec. Mstr. June 2, 2023) (finding $415 to be a reasonable hourly rate for work performed by Mr. Downing in 2022). This results in a reduction of $174.00[2] and a reduced total of $4,792.50 for counsel of record's attorneys' fees.

With respect to the fees and costs of the Carlson Firm, two issues have been raised – eligibility and reasonableness. Based on my own review, the billing records submitted by the Carlson Firm reflect hours that were substantially in pursuit of proceedings on this petition. Referring attorneys may be awarded fees even if they did not directly appear in the case. *E.g. Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *14 (Fed. Cl. Spec. Mstr. May 13, 2014). However, there is no evidence of record to suggest that any of the individuals from the Carlson Firm that worked on this case are eligible to practice before the U.S. Court of Federal Claims. An attorney must be eligible to practice before this court in order to be compensated for attorney work. *E.g. Razka v. Sec'y of Health & Human Servs.,* No. 14-1224V, 2017 WL 3165479, at *3 (Fed. Cl. Spec. Mstr. June 30, 2017); *Paredes, supra.* Accordingly, I will

---

[2] That is the $30 rate difference multiplied by 5.8 hours billed in 2022.

apply the same paralegal rate to work performed by the Carlson firm as has been awarded for work performed by counsel of record's paralegals.[3]  Additionally, I do not find any of the firm's billing subsequent to Mr. Downing's entry into the case to be reasonable.  *Accord Underwood, supra*, at *4 (explaining that "[e]ven if Mr. Underwood were eligible to receive attorney fees under the Vaccine Program, he could not be awarded fees for work performed after Mr. Homer made an appearance as counsel and became attorney of record in this matter.  Under the Vaccine Rules, petitioner may have only one counsel of record at a time."); *Mackey v. Sec'y of Health & Human Servs.*, No. 16-1289V, 2018 WL 3596801 (Fed. Cl. Spec. Mstr. May 10, 2018); *see also Sabella v. Sec'y of Health & Human Servs.*, 86 Fed Cl. 201, 214-15 (accepting the special master's conclusion that having multiple firms work on a case was unreasonable overstaffing).  That results in a reduction of 8.3 hours billed from September 14, 2022 onward.[4]

      I also find that the hours billed by the Carlson Firm are excessive given the limited progress the Carlson Firm made in prosecuting the case before referring it to counsel of record.  Several of the entries are vague, and the billing records overall include excessive internal communications. "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intraoffice communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries."  *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).  Moreover, I am concerned that Mr. Downing's subsequent billing records demonstrate the efforts of the Carlson Firm to have been inefficient.  Specifically, Mr. Downing's billing shows effort devoted to the first order task of obtaining medical records that were not retrieved by the Carlson Firm despite the hours billed.  Accordingly, I find an overall 20% reduction in the hours billed by the Carlson Firm is appropriate.  *Accord Thomas v. Sec'y of Health & Human Servs*., No. 20-886V, 2021 WL 2389837, at *11-12 (Fed. Cl. Spec. Mstr. May 17, 2021) (reducing attorneys' fees by 20% to align the billing to the scope of work performed given the early stage of the

---

[3] Although a higher rate of $175 was billed for legal assistant work within the Carlson Firm's ledger, this specific rate has not been substantiated and it would make little sense to reimburse the Carlson Firm's paralegal time at a higher rate than awarded to counsel of record given the firm's seeming lack of experience with this program.

[4] Although Mr. Downing did not move to be substituted as counsel until September 26, 2022 (ECF No. 11), the billing records from both firms confirm that the transition in representation occurred on September 14, 2022. (*Compare* ECF No. 30-1, p. 4 (billing as of 9/14/2022 for introducing client to new counsel and coordinating consent to associate) *with* ECF No. 24-1, p. 1 (Mr. Downing billing as of 9/14/2022 for meeting new client and substituting in as counsel).)  The Carlson Firm billing records confirm that preparations for referral of the case to Mr. Downing had previously occurred on September 9, 2022. (ECF No. 30-1, p. 1.)

case.)  All of this results in a reduced award of $7,278.80 for attorneys' fees incurred by the Carlson Firm.[5]

Upon my review of the billing records, the requested costs are all reasonable and sufficiently documented.  Accordingly, petitioner is awarded $51.53 for costs incurred by counsel or record and $653.60 for costs incurred by the Carlson Firm.

## VI.    Conclusion

In light of the above, petitioner's motion for an award of final attorneys' fees and costs (ECF No. 24) and petitioner's supplemental motion for an award of final attorneys' fees and costs (ECF No. 30) are hereby **GRANTED**, with reductions as described above, and petitioner is awarded $12,776.43, representing $12,071.30[6] in attorneys' fees and $705.13[7] in attorneys' costs.

**Accordingly, I award a total of $12,776.43 as follows:**

- **A lump sum in the amount of $4,844.03 in the form of a check payable to petitioner and her counsel, Andrew Donald Downing, Esq.; and**

- **A lump sum in the amount of $7,932.40 in the form of a check payable to petitioner and her counsel, the Carlson Firm.**

The clerk of the court shall enter judgment in accordance herewith.[8]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[5] That is: (67 hours - 8.3 hours) x 0.80 x $155 per hour = $7,278.80.

[6] This amount further breaks down as $4,792.50 for attorneys' fees for counsel of record and $7,278.80 for attorneys' fees for the Carlson Firm.

[7] This amount further breaks down as $51.53 for costs incurred by counsel of record and $653.60 for costs incurred by the Carlson Firm.

[8] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).